Case 10-61077   Filed 09/27/11   Doc 36

FILED

SEP 27 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re<br><br>Mike John Morgantini and<br>Janey Doreen Morgantini,<br><br>Debtors. | Case No. 10-61077-B-13<br><br>DC No. MHM-1 |

**MEMORANDUM DECISION REGARDING TRUSTEE'S
OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Deanna K. Hazelton, Esq., appeared on behalf of the chapter 13 trustee, Michael H. Meyer, Esq.

Robert S. Williams, Esq., appeared on behalf of the debtors, Mike John Morgantini and Janey Doreen Morgantini.

Before the court is an objection (the "Objection") by the chapter 13 trustee, Michael H. Meyer, Esq. (the "Trustee"), to confirmation of the chapter 13 plan (the "Plan") filed by Mike and Janey Morgantini (the "Debtors"). The parties waived the right to an evidentiary hearing and agreed to submit the matter after the filing of supplemental briefs.

The Trustee contends that the Plan fails to satisfy the "disposable income" test under 11 U.S.C. § 1325(b)(1)(B)[1] because the Debtors claimed three deductions

---

[1] Unless otherwise indicated, all bankruptcy, chapter, code section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8,

on their amended Form 22C (the "Means Test"),[2] which exceed the amounts already allowed for the designated expense categories in the National and Local Standards published by the Internal Revenue Service (the "IRS Standards"). Specifically, the Debtors deducted additional expenses which reflect the amounts they actually pay monthly for housing and utilities, transportation, food and clothing. The Debtors contend that these additional expenses should be allowed as "special circumstances." For the reasons set forth below, the Trustee's Objection to confirmation of the Plan will be sustained.

This memorandum contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 1325 and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A) & (L).

**Background and Findings of Fact.**

The Debtors' petition was filed on September 25, 2010. With the petition, they filed their Plan together with all required documents and schedules. The Debtors live in Bakersfield, California. Based on schedule I, Mr. Morgantini is employed as a supervisor by the City of Visalia. Mrs. Morgantini is retired and drawing social security. The Debtors have one automobile, a 2002 Kia Optima, that has 160,000 miles and which the Debtors valued at $800. The Debtors have no dependents, leaving a household size of two. The Debtors' annualized current income, stated on the Means Test to be $89,286.48 ($7,440,54 per month) is above

---

Apr. 20, 2005, 119 Stat. 23.

[2]The Debtors filed an amended Form 22C on November 18, 2010, after the Trustee filed this Objection. The court deems the Objection to relate to the amended Form 22C.

2

the median income for their household size.[3]  From their income, the Debtors have deducted monthly expenses totaling $7,451.76.  The resulting "monthly disposable income" on line 59 of the Means Test is *negative* $11.22.

On line 24A of the Means Test, the Debtors deducted $985 for "food, apparel and services, housekeeping supplies, personal care, and miscellaneous."  On line 25A of the Means Test, the Debtors deducted $423 for "housing and utilities; non-mortgage expenses."  On line 27A, the Debtors deducted $436 for "transportation; vehicle operation/public transportation expense."  These are the "no-look" deductions allowed in these categories for the Debtors' family based on the IRS Standards.  On line 57 of the Means Test, the Debtors claimed three additional "special circumstances" deductions described as "Housing and utilities" ($752.63), "Transportation" ($395.23), and "Food clothing & other" ($281.35) in the total amount of $1,429.21 (collectively, the "Additional Expenses").  Altogether, the Debtors have deducted, on lines 24A, 25A, 27A and 57, monthly expenses in these three categories totaling $3,273.21.

The Debtors' Plan provides for monthly payments to the Trustee in the amount of $2,200 for 60 months, which will include their postpetition mortgage payment.  The Plan provides that the unsecured creditors with claims in the estimated amount of $181,236.35 will receive a 5% distribution, or approximately $9,061 over the life of the Plan.  The Trustee contends that the Debtors' deductions are too high, meaning that the unsecured creditors are entitled to receive a higher distribution.  Specifically, the Trustee objects to the Additional Expenses deducted on line 57 of the Means Test.

In response, the Debtors filed a declaration in an effort to explain the Additional Expenses and to justify their inclusion as "special circumstances."  With

---

[3]The Debtors' gross monthly income reported on schedule I is $7,327.59.  As a government employee, Mr. Morgantini is anticipating postpetition pay cuts in the approximate amount of 9%.

regard to the "non-mortgage housing and utilities" expense, the Debtors have deducted a total of $1,175.63. The Debtors explain that they live in an old home with high utility costs. Their electricity and gas bills average $346.67 per month, repairs to the home and air conditioner average $141.70 per month, their water bill is $55 per month and septic tank maintenance is $58.33 per month ($700 per year). The Debtors also pay $125 per month for a lawn service because Mr. Morgantini "works out of town and does not have time to do this himself." They hire a tree trimming service at the cost of $125 per month ($1,500 per year). The Debtors maintain their own swimming pool, but have deducted $100 per month for swimming pool supplies. They also support two cellular telephones at an average monthly cost of $185.27 and a "land line" phone at a cost of $38. They need all of these telephones to "stay in touch." Altogether, the Debtors have offered an explanation for "non-mortgage housing and utility expenses" totaling $1,174.97 per month.

With regard to transportation expenses, the Debtors explain that Mr. Morgantini travels a long distance commuting 2½ hours per day, five days per week, from Bakersfield, California, to Visalia, California for work. His monthly gasoline bill is $519.12 and monthly car repairs average $115.94. Altogether, the Debtors have deducted on lines 27A and 57 of the Means Test a total of $831.23 for "transportation" expenses. However, their declaration only shows that they spend $635.06. They only have one automobile. The remaining $196.17 is not explained.

Finally, in the "food, clothing, & other" category, the Debtors have claimed deductions on lines 24A and 57 totaling $1,266.35 per month. Their declaration explains that they spend $1,024.02 per month on groceries and other food primarily because Mr. Morgantini "eats out a lot." The remainder of the deduction for "food, clothing & other" ($242.33) is not explained.

**Issues Presented.**

The singular issue presented here is whether the Debtors may deduct, as

4

"special circumstances," on line 57 of the Means Test, the actual expenses they incur in excess of the "no-look" deductions already allowed by the IRS Standards.

**Applicable Law.**

The analysis begins with Bankruptcy Code § 1325(b)(1)(B). A chapter 13 plan may not be confirmed over the objection of an unsecured creditor, or the chapter 13 trustee, unless it provides for payment of the debtor's "projected disposable income" to the allowed claims of unsecured creditors. The term "projected disposable income" is a number that is calculated through the Means Test, based on the debtor's income and various allowed deductions. The Means Test determines, *inter alia*, which statutes will govern the calculation of "disposable income," how much the debtors must pay to their unsecured creditors, and how long the debtors' chapter 13 plan must provide for those payments.

The Means Test was created as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), which Congress enacted "to correct perceived abuses of the bankruptcy system" and to "help ensure that debtors who *can* pay creditors *do* pay them." *Ransom v. FIA Card Services, N.A. (In re Ransom)*, 131 S.Ct 716, 721 (2011) (emphasis in original, citations omitted). The Means Test was designed by Congress "to measure debtors' disposable income and, in that way, 'to ensure that [they] repay creditors the maximum they can afford.'" *Id.* at 725.

Here, the Means Test shows that the Debtors' monthly income exceeds the State of California's median income which makes the Debtors "above median income." From the current monthly income, the Debtors may deduct "amounts reasonably necessary for the maintenance or support of the debtor or a dependent." § 1325(b)(2)(A)(i). For "above median income" debtors, the term "amounts reasonably necessary for maintenance or support" is determined with specific reference to § 707(b)(2), subparagraphs (A) and (B). § 1325(b)(3). Section 707(b)(2)(A) allows the deduction of living expenses based, *inter alia*, on the IRS

Standards.

In addition to expenses allowed by the IRS Standards, a debtor may also be able to deduct expenses which can be categorized as "special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces." § 707(b)(2)(B)(i). The debtor has the burden of proof to establish the "special circumstances" through an analysis involving a four-part inquiry. To justify an additional expense or adjustment to current monthly income, the debtor must (1) demonstrate that there is no reasonable alternative for the additional expense (§ 707(b)(2)(B)(i)), (2) itemize the additional expense (§ 707(b)(2)(B)(ii)), (3) provide documentation for the expense (§ 707(b)(2)(B)(ii)(I)), and (4) provide a detailed explanation of the special circumstances that make the expense necessary and reasonable (§ 707(b)(2)(B)(ii)(II)).[4] The debtor must attest under oath as to the accuracy of the information offered to demonstrate that the "special circumstance" expenses or adjustments to income are required (§ 707(b)(2)(B)(iii)).

For purposes of the Means Test, Congress did not provide an exhaustive list of "special circumstances," but it did give examples of situations which the court should consider as qualifying. It has been noted, that the examples given by Congress (a serious medical condition or a call to active duty in the Armed Forces) "both constitute situations which not only put a strain on a debtor's household budget, but they arise from circumstances normally beyond the debtor's control." *Egebjerg v. United States Trustee (In re Egebjerg)*, 574 F.3d 1045, 1053 (9th Cir. 2009) (citation omitted).

///

---

[4]There is no supporting documentation in the record for the Additional Expenses. The Debtors contend that their supporting documents were provided to the Trustee for review and the Trustee does not contend in this Objection that the Debtors' Additional Expenses were not adequately itemized or documented by the time this matter was submitted for a ruling. This Objection is based solely on the first and fourth "special circumstances" factors identified above.

6

## Analysis.

### The Additional Expenses Do Not Qualify as "Special Circumstances."

The Debtors contend in their supporting declaration that all of the Additional Expenses are reasonable and necessary for a variety of reasons, including the facts that they have an older home with high utility bills and Mr. Morgantini has to commute a long distance to work. Although some of the Debtors' additional expenses, such as job related commuting expenses, may qualify as "special circumstances," if properly documented, the court does not need to rule as to every itemized Additional Expense requested by the Debtors. So long as a significant amount of the Additional Expense is disallowed, then the Plan will not satisfy § 1325(b)(1)(B).

The difficulty here lies in the fact that the Debtors' declaration offers little from which the court can separate "necessary" expenses from "lifestyle" choices. The IRS Standards already allow "no-look" deductions, on lines 24A, 25A and 27A of the Means Test for the three categories of expenses listed on line 57. The Debtors took those full deductions. With some exceptions not applicable here, the Bankruptcy Code does not allow the deduction of actual expenses, in excess of those specifically allowed by the IRS Standards, simply because the debtors actually spend that amount of money. Indeed, the Bankruptcy Code specifically states that certain deductions for "above-median income" debtors "*shall be* the debtor's applicable monthly expense amounts specified under the [IRS] Standards . . . in effect on the date of the order for relief." § 707(b)(2)(A)(ii)(I). (Emphasis added.)[5] Clearly, with the enactment of BAPCPA, Congress intended that debtors who seek bankruptcy relief, and whose lifestyle may interfere with the ability to fully pay their

---

[5] Line 26 of the Means Test provides for consideration of additional "housing and utilities" expenses to which a debtor may be entitled under the IRS Standards if it can be shown that the IRS Standards "do not accurately compute the allowance." The Debtors did not take any deduction on line 26.

creditors, must be prepared to make some adjustments to their lifestyle in a good faith effort to repay the creditors as much as they can afford. The Debtors are essentially asking their creditors to fund the cost of their lifestyle.

The wording of the Bankruptcy Code allows the court some discretion to allow a "special circumstance" expense when there is a true need for the expense due to circumstances which are clearly beyond the debtor's control and for which there is no reasonable alternative. Cases in which the courts have allowed the deduction of extra expenses usually involve extraordinary situations. Here, the Debtors' declaration fails to show that all of the Additional Expenses they have claimed are the result of "extraordinary circumstances" and factors "beyond their control." Indeed, their declaration raises more questions that it answers. For example, the Debtors spend over $1,000 per month on food, for two people, because Mr. Morgantini works out of town and "eats out a lot." Why can't Mr. Morgantini take his lunch to work instead of "eating out a lot" at the expense of his creditors? Is it absolutely necessary that Mr. Morgantini eat all of his meals in restaurants, or is that a lifestyle choice? Clearly, there is a reasonable alternative to eating exclusively in restaurants five days a week.

The Debtors spend $1,500 per year to trim the trees on their property and an additional $1,500 per year for lawn service because Mr. Morgantini does not have time to mow the lawn. Why should the creditors pay for a lawn service to mow the Debtors' lawn just because Mr. Morgantini does not think he has time to do it himself? Unless Mr. Morgantini is physically unable to maintain his yard, then the choice to pay for a lawn service is a lifestyle choice for which there is a reasonable alternative. Why do the trees on the Debtors' property have to be trimmed every year at the expense of their creditors? Do the trees present a safety hazard, or is tree trimming a lifestyle choice? What kind of cellular telephone service are they paying for at the cost of $185.27 per month? Is it basic service or do they have "smart

phones" with unlimited texting and internet service?[6] If the Debtors only have one automobile, which Mr. Morgantini uses to commute to work each day, why can't the Debtors "stay in touch" with less cellular telephone expense using their "land line service"? The Debtors had the burden of proof to answer these questions and show that the Additional Expenses are truly "special circumstances." They have failed to do so.

Before concluding, it is important to note that the traditional "current monthly income/disposable income" analysis has changed since the U.S. Supreme Court decided *Hamilton v. Lanning*, 130 S.Ct. 2464 (2010). It is now established that the calculation of "projected disposable income" is not necessarily tied to prepetition conditions and the court may take into consideration postpetition changes in the Debtors' income and expenses "that are known or virtually certain at the time of confirmation." *Id.* at 2478. Since the commencement of this case, the Debtors' personal and financial situation may have changed in a way that makes the allowance or disallowance of certain expenses more appropriate or irrelevant. Based on this ruling, the Debtors will need to amend their Means Test to properly calculate their projected disposable income. However, when they return to court to confirm a modified plan, the court anticipates that the Trustee's approval, or rejection, of that modified plan will take into consideration the principals in *Lanning*.

The court also notes that the Debtors' proposed Plan already provides for a 5% distribution to unsecured creditors, even though the original Means Test shows the lack of any disposable income. The court has not been asked to consider whether its ruling here, disallowing the Additional Expenses, will result in a

---

[6]It is this court's observation that family-wide, full high cost cellular telephone/internet service is becoming an expectation in a growing number of chapter 13 bankruptcy cases. Until the IRS Standards recognize "smart phones" and unlimited texting as a "necessary and reasonable" expense, the courts should be reluctant to set that standard as the new "normal."

9

distribution of greater than 5%. For that matter, the practical affect of this ruling may be insignificant. That said, the court leaves open the possibility that the parties may now be able to reach a compromise solution and proceed with confirmation of this Plan with some adjustments reflected in the confirmation order, and without the need for further litigation.

**Conclusion.**

Based on the forgoing, the Debtors have failed to satisfy their burden of proof with regard to the calculation of projected disposable income and compliance with § 1325(b)(1)(B). To the extent that the Debtors are requesting "special circumstance" deductions totaling $1,429.21 on line 57 of the Means Test, representing monies they actually spend in excess of the no-look deductions already allowed and taken under the IRS Standards, those deductions will not be allowed in full. The Trustee's Objection to confirmation of the Plan will be sustained. Confirmation of the Plan will be denied without prejudice to the parties' right to compromise this matter and yet confirm this Plan with the settlement terms reflected in the confirmation order.

Dated: September 27, 2011

W. Richard Lee
United States Bankruptcy Judge

Case 10-61077    Filed 09/27/11    Doc 36

Mike John Morgantini & Janey Doreen Morgantini
Case No. 10-61077-B-13/DC No. MMH-1


Mike John Morgantini
Janey Doreen Morgantini
1607 Mystic Meadows St
Bakersfield, CA 93312

Robert S. Williams, Esq.
Attorney at Law
1300 18th St., #B
Bakersfield, CA 93301

Deanna K. Hazelton, Esq.
Attorney at Law
P.O. Box 28950
Fresno, CA 93729-8950

Michael H. Meyer, Esq.
Chapter 13 Trustee
P.O. Box 28950
Fresno, CA 93729-8950

Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721